CARLTON, J„
for the Court:
¶ 1. James Allen Higginbotham appeals the Winston County Circuit Court’s denial of his motion for post-conviction relief (PCR). Higginbotham raises the following assignments of error: whether (1) Mississippi Code Annotated section 97-3-21 (Rev.2006) is unconstitutionally broad and vague; (2) he entered an involuntary guilty plea due to mistaken advice of counsel; (3) the circuit court erroneously instructed him that he would be eligible for parole; *11 (4) the circuit court lacked jurisdiction to sentence him for murder, when the indictment set forth that he had only committed a conspiracy or was an accessory after the fact to the murder; (5) the circuit court denied him counsel to effectively aid in his evidentiary hearing and on direct appeal; and (6) the circuit court violated the plea agreement by sentencing him to “capital murder.” Finding no error, we affirm.
FACTS
¶ 2. In 2008, a grand jury before the Winston County Circuit Court indicted Higginbotham for one count of capital murder under Mississippi Code Annotated section 97-3-19(2)(d) (Rev.2006). Higginbotham’s indictment stated, in part, as follows:
JAMES ALLEN HIGGINBOTHAM
On or about the 9th day of December, 2007, in Winston County, Mississippi, and within the jurisdiction of this [cjourt, while acting in concert with J.C. HIGGINBOTHAM, SANDRA RANEA VOWELL, and VICKY RENE HIGGINBOTHAM, or while aiding, abetting, assisting, or encouraging each other, did then and there without authority of law, by any means or in any manner, wilfully, feloniously and with deliberate design to effect death, kill and murder a human being, to-wit: L.S. “Tooter” Vowell, Jr., by shooting him with a firearm, said murder being perpetrated by the said J.C. HIGGINBOTHAM after he had been offered or had received anything of value for committing the murder, and J.C. HIGGINBOTHAM, SANDRA RANEA VOWELL, JAMES ALLEN HIGGINBOTHAM, and VICKY RENE HIGGINBOTHAM, being parties to the murder and charged as principals to said crime, being the crime of murder for hire as defined in section 97-3-19(2)(d) ... and against the peace and dignity of the State of Mississippi!.]
On May 18, 2009, Higginbotham entered a guilty plea to the lesser offense of murder under Mississippi Code Annotated section 97 — 3—19(l)(a) (Rev.2006). The circuit court sentenced Higginbotham to serve the remainder of his natural life in the custody of the Mississippi Department of Corrections (MDOC).
¶ 3. On April 7, 2011, Higginbotham filed a PCR motion. Following an evidentiary hearing, the circuit court denied the motion. Higginbotham now appeals.
STANDARD OF REVIEW
¶ 4. The standard of review in cases involving the trial court’s denial of a PCR motion is well settled. ‘When reviewing a [trial] court’s decision to deny a petition for post-conviction relief, an appellate court will not disturb the trial court’s factual findings unless they are found to be clearly erroneous. However, where questions of law are raised, the applicable standard of review is de novo.” Ross v. State, 87 So.3d 1080, 1081 (¶5) (Miss.Ct.App.2012).
DISCUSSION
I. CONSTITUTIONALITY OF SECTION 97-3-21
¶ 5. Higginbotham argues that section 97-3-21 is unconstitutionally broad and vague. Specifically, Higginbotham claims that the penalty for murder is life with the possibility of parole; however, he asserts that, according to the MDOC, he is not eligible for parole.
¶ 6. The grand jury indicted Higginbotham for capital murder. As reflected in his plea petition, however, Higginbotham pled guilty to the lesser crime of murder under section 97-3-19(l)(a). The circuit court then sentenced *12 Higginbotham for the crime of murder to life imprisonment. His plea petition provided that he was sentenced under Mississippi Code Annotated section 47-7-3(l)(f) (Rev.2011), which clearly prohibits parole eligibility in this case. Section 47 — 7—3(l)(f) states: “No person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of [Mississippi Code Annotated] [sjection 99-19-101 [ (Rev.2007).]” However, Higginbotham argues that section 97-3-21 entitles him to parole eligibility. Section 97-3-21 states:

Every 'person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary.

Every person who shall be convicted of capital murder shall be sentenced (a) to death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in [s]ection 47 — 7—3(l)(f).
(Emphasis added).
¶ 7. Higginbotham appears to confuse the penalties for murder and capital murder. He primarily argues that the wording of section 97-3-21 has not been amended and is inconsistent with section 47-7-3(l)(f) regarding parole eligibility. Section 47 — 7—3(l)(f) prohibits parole eligibility for a prisoner sentenced to life imprisonment under Mississippi Code Annotated section 99-19-101 for capital murder or “other capital offense[s].” Since Higginbotham pled guilty to murder, carrying a life sentence, he falls under this prohibition of other capital offenses due to his life sentence. See Miss.Code Ann. § 1-3-4 (Rev. 2005) (“The terms ‘capital case,’ ‘capital cases,’ ‘capital offense,’ ‘capital offenses,’ and ‘capital crime’ when used in any statute shall denote criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary.”). See generally Williams v. State, 94 So.3d 324, 333-35 (¶¶ 33-35) (Miss.Ct.App.2011) (certiorari denied) (discussing parole eligibility for those convicted of capital murder). Because Higginbotham pled guilty to the lesser crime of murder and received a life sentence, he would be eligible to petition for conditional release at age sixty-five under Mississippi Code Annotated section 47-5-139(l)(a) (Rev.2011).[1]
¶8. Higginbotham’s plea petition references the correct statutory provision for sentencing but improperly uses the term “parole” instead of “conditional release.” However, Higginbotham’s own testimony at the evidentiary hearing on his PCR motion reflects that his attorney advised him of his potential release at the age of sixty-five instead of eligibility for parole after serving only ten years, as Higginbotham now claims he was entitled. Since Higginbotham was thirty-six years old at the time of his plea and sentencing, he will have served substantially more than ten years upon reaching age sixty-five. Notably, at the evidentiary hearing, Higginbotham testified that his attorney advised him that he would be eligible for parole at the age of sixty-five, when he could petition for release.
¶ 9. Higginbotham’s testimony shows that his argument of ambiguity arises from a reading of section 97-3-21 and his attorney’s use of the term “parole eligibility” instead of “conditional release,” but not from his attorney’s advice on his *13 plea. Section 97-3-21 states that upon conviction for murder, a life sentence will be imposed. Section 97-3-21 references parole eligibility when addressing capital murder, but does not address parole for murder. However, section 47 — 7—3(1)(f) prohibits parole eligibility for persons convicted of both murder and capital murder. The Legislature has yet to amend section 97-3-21 to clarify this point. Regardless, the reference in section 97-3-21 to parole eligibility in capital-murder cases fails to impact this case since Higginbotham pled guilty and the trial court sentenced him to simple murder, not capital murder. The affidavits submitted by Higginbotham, along with his PCR motion, contradict his own sworn testimony at his evidentiary hearing regarding his attorney’s advice. However, the testimony at the evidentiary hearing of Higginbotham’s uncle, Prentiss Ray, is consistent with Higginbotham’s testimony that his attorney told him he would be eligible for early release at age sixty-five.
¶ 10. This assignment of error is without merit.
II. VALIDITY OF GUILTY PLEA
¶ 11. Higginbotham argues that he involuntarily pled guilty on the erroneous advice of his defense counsel. Specifically, Higginbotham claims that his attorney advised him that if he pled guilty to murder, he would be eligible for parole after serving only ten years of his life sentence. Higginbotham pled guilty to murder under section 97 — 3—19(l)(a) and received a sentence of life imprisonment. Higginbotham contends that he would not have pled guilty to this crime if he had been correctly advised of his parole eligibility. Higginbotham also asserts that his diminished mental condition rendered his guilty plea involuntary.[2]
¶ 12. Higginbotham’s sworn plea petition states as follows:
I wish to plead GUILTY to the charge(s) of: Murder[. Miss.Code Ann.] § 97 — 3—19(l)(a).
[[Image here]]
I know that if I plead Guilty to this (these) charge(s), the possible sentence is imprisonment for life in the State Penitentiary with eligibility for parole as provided in [section] 47 — 7—3(l)(f).
I also know that the sentence is up to the [e]ourt; that the [c]ourt is not required to carry out any understanding made by me and my attorney with the District Attorney; and further, that the [c]ourt is not required to follow the recommendation of the District Attorney, if any. The District Attorney ... shall make no recommendations to the [c]ourt concerning my sentence except as follows:
The District Attorney recommends: imprisonment for life in the State Penitentiary with eligibility for parole as provided in [section] 47 — 7—3(l)(f).
¶ 13. On May 18, 2009, Higginbotham’s plea hearing commenced. Higginbotham offered no evidence questioning his competency.[3] See Dillon v. State, 75 So.3d 1045, 1051 (¶ 18) (Miss.Ct. App.2010) (“The key phrase in [Uniform] Rule [of Circuit and County Court] 9.06 in determining whether a competency hearing is required is ‘reasonable ground to *14 believe that the defendant is incompetent.’ The circuit judge is in the best position to view the evidence and to ‘observe the demeanor and behavior of the defendant.’ ”). The circuit court took great measures to ensure that Higginbotham understood his actions in pleading guilty and also the consequences of doing so. Regarding Higginbotham’s potential sentence, the circuit court had the following exchange with Higginbotham:
THE COURT: It’s the [cjourt’s understanding that the district attorney’s office is allowing you to plead guilty from capital murder to the lesser included offense of murder. Do you understand for the lesser included offense of murder, the sentence in this case will be life in prison with-in the custody of [the] Mississippi Department of Corrections? Do you understand that to be the recommendation?
HIGGINBOTHAM: Yes, sir.
THE COURT: And do you understand if you were tried and convicted of the ' crime of capital murder[,] that a jury could affix the death penalty upon you, and you could be sentenced to death?
HIGGINBOTHAM: Yes, sir.
THE COURT: And if they didn’t sentence you to death, the penalty for capital murder would be life in prison without parole.
HIGGINBOTHAM: Yes, sir.
THE COURT: But on the straight life — I mean on straight murder, it is a life sentence. Do you understand that?
HIGGINBOTHAM: Yes, sir.
Higginbotham then testified he was completely satisfied with the representation that he received from Steve Wright, his defense counsel. Higginbotham also confirmed that his plea of guilty was his own free and voluntary act.
¶ 14. At the evidentiary hearing on his PCR motion, Higginbotham testified that prior to entering his guilty plea, Wright advised him that he could petition for early release after age sixty-five:
THE COURT: ... [A ]nd you heard Mr. Wright advise that after age 65— did Mr. Wright tell you when you got to be age 65 you could petition to be released?
HIGGINBOTHAM: Yes, sir.
THE COURT: So then[,] you did know that?
HIGGINBOTHAM: See, at the — when get [sic] convicted after June 1994 on [a] life sentence, ain’t no more parole.
THE COURT: But did Mr. Wright tell you, you would be eligible for release at age 65 if you petitioned to be released—
HIGGINBOTHAM: Yeah, but I read that statute.
THE COURT: Well, I’m not asking you about that statute. I’m asking you if that’s what he—
HIGGINBOTHAM: That’s what he told me.
THE COURT: Well, where did this come from[,] where you’re claiming that he said after you serve ten years, you could be released? Where did that come from?
HIGGINBOTHAM: Out of the statute[,] the guy that done my paperwork for me.
THE COURT: But Mr. Wright didn’t tell you that?
HIGGINBOTHAM: Yeah, he told me that, too.
THE COURT: So which did he tell you, then, that you would be 65 or that you’d — after ten years?
HIGGINBOTHAM: He said ten years and said 65. So I don’t know what he *15 told me. So I read something — I read it in the paper. It said ten years, too.
THE COURT: So you’re basing it now on what you read in some old statute rather than what Mr. Wright told you, then; is that correct?
HIGGINBOTHAM: Yes, sir.
(Emphasis added).
¶ 15. Higginbotham submitted an affidavit from his mother, Mary A. Higginbotham, which stated that Wright told her that her son would be-eligible for parole after serving ten years if he pled guilty. However, Mary testified at the evidentiary hearing that Wright never told her that her son would be eligible for parole in ten years, as she claimed in her affidavit.
¶ 16. Higginbotham also submitted the affidavit of Ray, his uncle. Ray’s affidavit stated that he heard Wright tell Higginbotham that if he pled guilty, he would be eligible for parole in ten years. However, Ray testified at the evidentiary hearing that Wright said Higginbotham would be sixty-five years of age before he could “get out of it.”
¶ 17. Wright testified that he told Higginbotham that he could apply for parole at age sixty-five as long as he had served, at that time, at least ten years. Wright denied ever telling Higginbotham’s mother or his uncle that Higginbotham would be eligible for parole after serving only ten years.
¶ 18. After hearing the testimony of the witnesses, the circuit court determined that Wright did not advise Higginbotham that he would be eligible for parole after only serving ten years in prison. The circuit court instead found that Wright correctly advised Higginbotham that when he reached the age of sixty-five, he could petition to be released from custody under Mississippi Code Annotated section 47-5-139(l)(a). The circuit court found that while Wright may have used the term “parole eligibility” rather than the correct term “conditional release,” Wright correctly advised Higginbotham that he would be eligible for release at age sixty-five.
¶ 19. After reviewing the record, we find no evidence in the record contrary to the finding of the circuit court that Higginbotham entered a knowing, voluntary, and intelligent plea. See Burrough v. State, 9 So.3d 368, 373 (¶ 11) (Miss.2009) (“A guilty plea will be found valid if it is shown to have been voluntarily and intelligently made by the criminal defendant before the trial court.”). As such, we find no merit to this issue and no abuse of discretion by the circuit court.
¶ 20. We, likewise, find no merit to Higginbotham’s claim that he received ineffective assistance of counsel because his attorney allegedly provided him with the wrong legal advice concerning parole eligibility. The circuit court informed Higginbotham of the charge against him, the effect of his guilty plea, the rights he waived by pleading guilty, and the possible sentence he could receive. The plea petition, the guilty-plea colloquy, and the post-trial PCR evidentiary hearing, taken together, reflect that Higginbotham’s counsel correctly advised him of the life sentence, his potential for release at age sixty-five, and the correct sentencing statutory provision, section 47 — 7—3(l)(f). This statutory provision prohibits parole eligibility because Higginbotham pled guilty to murder and was sentenced to life imprisonment. Higginbotham, however, has the potential for release under section 47-5-139(l)(a) at age sixty-five after serving fifteen years by petitioning for early release at or after age sixty-five. Higginbotham was thirty-six years old at the time of his guilty plea and sentence; therefore, upon reaching age sixty-five, Higginbotham will have served substantially more than fifteen years. At the *16 evidentiary hearing, Higginbotham admitted being advised of eligibility to be released at age sixty five. Further, the testimony from the plea hearing shows that Higginbotham was satisfied with his attorney upon entering his guilty plea, and that Higginbotham entered a voluntary guilty plea.
¶ 21. In order to succeed on an ineffective-assistance-of-counsel claim, Higginbotham must prove that his counsel rendered deficient performance, which prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Higginbotham has failed to meet this burden. Consequently, we find that this argument is also without merit.
III. PAROLE ELIGIBILITY
? 22. Higginbotham contends that the circuit court erroneously advised him that he would be eligible for parole. We recognize, however, that “[ejarly release and parole are matters of legislative grace and are not consequences of a guilty plea. The trial court is not required to explain it.” Robinson v. State, 964 So.2d 609, 613 (¶ 16) (Miss.Ct.App.2007) (internal citations omitted).[4] Here, Higginbotham pled guilty to murder. The circuit judge sentenced Higginbotham to life imprisonment. At his plea hearing, the circuit court informed Higginbotham of the consequences of his guilty plea and of the potential sentences that he stood to receive. The record reflects that the circuit court rendered no advice or comment stating or inferring, that Higginbotham would be eligible for parole. This issue is without merit.
IV. INDICTMENT[5]
¶ 23. Higginbotham argues that the grand jury intended to indict him for either conspiracy or aiding and abetting, i.e., accessory after the fact. According to Higginbotham, his wife was indicted as a co-conspirator, and entered a guilty plea to conspiracy. Therefore, following Higginbotham’s reasoning, the circuit court erred in sentencing him for murder.
¶ 24. The Winston County grand jury indicted Higginbotham for capital murder. Higginbotham subsequently pled guilty under section 97-3-19(l)(a) to the lesser crime of murder. A review of the transcript shows that the circuit court correctly advised Higginbotham of the potential sentences available for both capital murder and murder. The hearing transcript also shows that Higginbotham knew and understood that he had been indicted for capital murder and was pleading guilty to the lesser crime of murder, with a sentence of life imprisonment. “A valid guilty plea waives the right to challenge the sufficiency of the State’s evidence.” Grissom v. State, 66 So.3d 1280, 1282 (¶ 6) (Miss.Ct.App.2011); see Evans v. State, 61 So.3d 922, 925 (¶ 9) (Miss.Ct.App.2011) (stating that a valid guilty plea operates as a waiver against any “non-jurisdictional rights or defects”). See also URCCC 8.04(A)(4). Higginbotham can no longer challenge the sufficiency of the State’s evidence of his guilt regarding murder. See Grissom, 66 So.3d at 1282 (¶ 6). This argument is without merit.
¶ 25. Furthermore, we find no merit to Higginbotham’s contention that *17 the circuit court violated the plea agreement by sentencing him to “capital murder.” As recognized above, Higginbotham pled guilty to murder under section 97-3-19(l)(a), not capital murder. The penalty for murder as defined in section 97-3-19(l)(a) is life imprisonment, which is the sentence Higginbotham received. Additionally, regarding a trial court’s sentencing discretion, we recognize that the Mississippi Supreme Court has held:
[I]t is well-settled in Mississippi that the imposition of a sentence upon a criminal conviction belongs within the sound discretion of the trial court (not the prosecutor) and generally is not subject to appellate review if it is within the limits prescribed by the applicable statute. This includes sentences based on guilty pleas. So long as the judge remains uninvolved in any plea negotiations between the defendant and the State, it will not be reversible error for a trial judge to sentence a defendant to a longer term than that recommended by the State.
Burrough, 9 So.3d at 372 (¶ 10) (internal citations omitted). This issue is without merit.[6]
V. COURT-APPOINTED COUNSEL
¶ 26. Higginbotham argues that he was entitled to legal representation at the post-conviction evidentiary hearing and on this appeal. We disagree. “The trial court may appoint counsel to represent an indigent defendant in a PCR evi-dentiary hearing.” Nance v. State, 766 So.2d 111, 114 (¶ 12) (Miss.Ct.App.2000). However, “a criminal defendant has neither a state nor federal constitutional right to appointed counsel in post-conviction proceedings.’” Watts v. State, 981 So.2d 1034, 1037 (¶ 6) (Miss.Ct.App.2008). “[A]n appeal from a final judgment denying post-conviction relief is provided for by the Mississippi Uniform Post-Conviction Collateral Relief Act, and there is no right to appointed counsel.” Id.[7] Even though no right to counsel exists in most civil cases,[8] the trial court has discretion to appoint counsel in PCR proceedings where the trial court determines that the petitioner qualifies and displays a need for counsel. See, e.g., Unruh v. Puckett, 716 So.2d 636, 641 (¶ 21) (Miss.1998) (recognizing the need for appointed counsel existed because the petitioner had limited case materials, due to imprisonment in South Dakota, and claimed indigent status); Gray v. State, 13 So.3d 283, 296 (¶30) (Miss.Ct.App.2008) (“[Bjecause of the complexity of the issues presented in Gray’s appeal and because the resolution of the issues could potentially affect a class of prisoners, we feel that justice would be best served if Gray, who is indigent, were provided appointed counsel for the evidentiary hearing.”). See Miss.Code Ann. §§ 99-39-23(1), 99-15-15 (Rev.2007 & Supp.2011).[9] However, a re *18 view of the record, including the post-trial evidentiary hearing, fails to reflect a need for appointment of counsel for post-trial or appellate proceedings. We, therefore, find no abuse of discretion by the circuit court in denying appointment of counsel for the evidentiary hearing on Higginbotham’s PCR motion. Therefore, this assignment of error is without merit.
¶ 27. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. Section 47-5~139(l)(a) provides:
An inmate shall not be eligible for the earned time allowance if ... [t]he inmate was sentenced to life imprisonment; but an inmate, except an inmate sentenced to life imprisonment for capital murder, who has reached the age of sixty-five (65) or older and who has served at least fifteen (15) years may petition the sentencing court for conditional release^]

. Higginbotham asserts that "he suffers from a mental condition^] one that falls under 'mental retardation,’ " and also that he has a low IQ score.

. While Higginbotham informed the circuit court that he was in special education in school, the circuit court responded by asking Higginbotham if he was "clear-headed,” understood what was occurring, and knew the difference between right and wrong. Higginbotham responded affirmatively.

. This Court has stated:
It will not be suggested by anybody that, before accepting a plea of guilty to an offense with respect to which parole is a possibility the judge must determine whether the defendant understands the nature of parole, his eligibility therefor, and the circumstances in which it may thereafter be granted.
Stewart v. State, 845 So.2d 744, 747 (¶ 9) (Miss.Ct.App.2003).

. For purposes of efficiency, we have consolidated Higginbotham's fourth and sixth issues in our discussion.

. Higginbotham also claims that he received ineffective assistance of counsel when he received a sentence for a crime for which he was not indicted. Because we find that the circuit court properly sentenced Higginbotham for murder, we decline to address this claim.

. See M.R.A.P. 6 (stating on its face that the procedural rule applies only to criminal cases).

. The right to counsel exists in limited civil cases, such as certain cases involving termination of parental rights where criminal allegations of abuse arise. J.C.N.F. v. Stone County Dep’t of Human Servs., 996 So.2d 762, 770 (¶¶ 28-29) (Miss.2008).

.Section 99-15-15 states, in part:
When any person shall be charged with a felony, misdemeanor punishable by confinement for ninety (90) days or more, or commission of an act of delinquency, the court or the judge in vacation, being satisfied that such person is an indigent person and is unable to employ counsel, may, in the discretion of the court, appoint counsel to defend him.