# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00008-COA

**KENDALL MAGEE A/K/A KENDALL K. MAGEE**　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2022 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENDALL MAGEE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 08/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.　　Kendall Magee appeals from the Walthall County Circuit Court's order denying his motion for post-conviction collateral relief (PCR). On appeal, Magee argues that the circuit court erred by failing to appoint counsel to represent him at his evidentiary hearing, finding that he entered his guilty pleas knowingly, intelligently, and voluntarily, and denying his claim of ineffective assistance of counsel. Upon review, we find no error and affirm the circuit court's order denying Magee's PCR motion.

## FACTS

¶2.　　In 2015, "Magee pled guilty to second-degree murder and possession of a firearm by a convicted felon." *Magee v. State*, 340 So. 3d 297, 298 (¶1) (Miss. 2022). The circuit court

sentenced Magee to serve thirty-five years in custody for second-degree murder, with ten years suspended and five years of post-release supervision. *Id.* The circuit court also sentenced Magee to a term of ten years for possession of a firearm by a felon, with all ten years suspended and five years of post-release supervision. *Id.* The circuit court ordered Magee to serve his sentences consecutively in the custody of the Mississippi Department of Corrections (MDOC). *Id.*

¶3. In 2018, Magee filed a timely PCR motion and asked the circuit court to vacate his guilty pleas. *Id.* at (¶2). In his motion, Magee asserted that his guilty pleas were involuntary, his trial attorney was ineffective, and the circuit judge coerced him into pleading guilty. *Id.* In arguing ineffective assistance of counsel, Magee stated that his trial attorney had advised him to accept the State's offered plea deal because Magee "would only serve six to seven years in prison." *Id.* Magee claimed that only after entering his guilty plea did he learn that he was ineligible for early release and would actually be required to serve twenty-five years in custody. *Id.*

¶4. As exhibits to his PCR motion, Magee attached supporting affidavits from himself, his mother, and two aunts. *Id.* at (¶3). Magee's affidavit provided that his trial attorney had contacted him about a proposed plea offer from the State and had informed him "that if he pled guilty, he would 'only serve actual time in prison six to seven years.'" *Id.* Even though his attorney made "no mention . . . of early release programs he may or may not be eligible for," Magee stated that "'he relied on the fact that [his attorney] affirmatively told him he

2

would only serve six or seven years.'" *Id.* Claiming that his trial attorney misled him about the consequences of his plea and the length of time he would serve in prison, Magee asserted that he would have rejected the State's plea offer and proceeded to trial had he been correctly advised. *Id.*

¶5.     Magee's mother stated in her affidavit that she was present during a meeting between Magee and his attorney when the trial attorney informed Magee that "he would only serve 6 to 7 years in prison" if he accepted the State's plea offer. *Id.* at 299 (¶4). In the affidavits provided by Magee's two aunts, they likewise avowed that Magee's trial attorney had informed Magee "he would only serve six to seven years in prison if he accepted the State's recommended plea offer." *Id.*

¶6.     The circuit court granted an evidentiary hearing on Magee's PCR claims. *Id.* at (¶5). At the hearing, the circuit court denied Magee's pre-hearing motions, which had included the following: a "motion to recuse," a "motion for appointment of counsel for purposes of post-conviction evidentiary hearing," a "motion for continuance of evidentiary hearing pending appointment of counsel and preparation for hearing," and a "motion for order directing Walthall County Jail to permit special visit with evidentiary hearing witnesses." *Id.* at (¶¶5-6). Due to the circuit court's denial of his motion for appointed counsel, Magee represented himself at the evidentiary hearing. *Id.* at (¶6).

¶7.     Following the hearing, the circuit court found that Magee's claims lacked merit and entered an order denying Magee's PCR motion. *Id.* at (¶¶6, 7). Magee appealed from the

circuit court's order denying his PCR motion and "claimed the circuit court erred by (1) not allowing him to present testimony of his former attorney or three witnesses at the evidentiary hearing, (2) failing to address his claim that he pled guilty in reliance on incorrect advice regarding his sentence, and (3) denying his motion to continue the evidentiary hearing." *Id.* at (¶8) (citation and internal quotation mark omitted). This Court affirmed the circuit court's order denying Magee's PCR claims. *Id.* at (¶9).

¶8.     Magee filed a petition for writ of certiorari in which he asserted that the circuit court should have given him the opportunity to prove his claim about his attorney's incorrect advice if he could do so and to make a record of his relevant evidence. *Id.* at 300 (¶10). Magee further asserted that "the circuit court erred by not allowing him to present witness testimony at the evidentiary hearing." *Id.* The Mississippi Supreme Court granted Magee's petition. *Id.* On certiorari review, the supreme court found that "despite granting an evidentiary hearing, the circuit court failed to address th[e] issue" Magee raised regarding his trial attorney's affirmative misinformation and Magee's reliance on the incorrect advice in pleading guilty. *Id.* at 302 (¶17). The supreme court concluded Magee was entitled to a second evidentiary hearing to determine if his trial attorney had misinformed him about the consequences of pleading guilty and if he had entered his guilty pleas in reliance on the alleged incorrect advice. *Id.* at 303 (¶19). The supreme court therefore reversed the decisions of both this Court and the circuit court and remanded the case for a second evidentiary hearing consistent with the supreme court's opinion. *Id.* at (¶20).

¶9.     On remand, the circuit court held a second evidentiary hearing on August 22, 2022. The circuit court allowed Magee to present evidence regarding his claim that his trial attorney had affirmatively misinformed him about the possibility of an early release. Magee called as witnesses his mother Shirley Smith, his aunts Audrey Smith and Millie Dillon, and his trial attorney Robert Laher.

¶10.     First, Magee's mother Shirley testified that she was present on two separate occasions when Laher said that Magee would get out of prison in "5 to 6 years" or "6 to 7 years" if Magee took "the plea deal of 25 years . . . ." Next, Magee's aunt Audrey testified that she was present for a meeting at the "Walthall County Prison" that also included Laher, Magee, Shirley, and Millie. Audrey stated that during the meeting, Laher said if Magee "would take the plea deal for 6 to 7 years[,] he [(Magee)] would be out." On cross-examination, Audrey stated that she never heard Laher mention "5 to 6 years" or "25 years" in relation to the second-degree-murder charge. Audrey also stated that she never heard Laher mention a ten-year sentence in connection with the charge for possession of a firearm by a felon. In addition, Audrey testified that she was not present when Magee pled guilty to his two indicted charges.

¶11.     Magee's other aunt Millie stated that she also was present when Laher remarked, "[L]et's go on and plea[,] and . . . [Magee] would be out in less than 6 or 7 years." When the State asked on cross-examination if Millie remembered whether Laher said Magee "was pleading guilty to a second[-]degree murder" charge, Millie testified that she could not

5

remember. Further, when asked if she was present for a meeting with Magee's trial attorney outside the courtroom, Millie responded that she had never met an attorney and that she did not remember.

¶12. Finally, Magee called Laher as a witness and asked about the advice Laher had given regarding how much time Magee would serve if he accepted the State's plea deal. Throughout his testimony, Laher denied that he had misinformed Magee about the consequences of pleading guilty to second-degree murder. Laher stated, "It was my understanding then as it's my understanding now that 25 years under a murder two charge is 25 years. You'll serve that amount of time. So that's what I would have told you. I don't remember the specific conversation[,] but that's what I would have told you." In addition, Laher testified "that at the end of the day[,]" he remembered Magee being made "aware of what the potential sentence could be, the potential outcome of a trial, the potential penalty associated with the plea that [Magee was] making[,] and that [Magee] elected to make that plea." In response to further questioning, Laher stated that during his conversations with Magee he never used pressure, coercion, threats, or promises to induce Magee to plead guilty to the indicted charges.

¶13. To conclude the testimony, the State called Magee as a witness. Magee stated Laher had told him that he would "get[] 25 years but [that] the only time [he was] going to have to serve [was] 6 to 7 years." The State presented Magee with a document titled "Know Your Rights Before Pleading," which Magee had reviewed and signed before entering his pleas.

6

The document had asked Magee the following: "Has anyone threatened, abused, or promised you anything to cause you to want to plead guilty?" Magee had answered "no" to the question. Similarly, when the circuit judge asked Magee under oath during the plea colloquy if anyone had promised him anything in exchange for his guilty plea, Magee had responded in the negative.

¶14.   On October 25, 2022, the circuit court clerk entered the circuit court's order denying Magee's PCR motion. After considering all the witness testimony and evidence presented at the hearing, the circuit court found that Magee "was not misinformed by his attorney as to the consequences of his pleas of guilty" but had instead entered his guilty pleas knowingly, intelligently, and voluntarily. The circuit court therefore denied Magee's PCR motion claiming that his trial attorney had provided ineffective assistance by misinforming him about the consequences of his guilty pleas. Magee unsuccessfully moved for the circuit court to reconsider its decision. Aggrieved, Magee appeals.

## STANDARD OF REVIEW

¶15.   "When reviewing a circuit court's denial or dismissal of a PCR motion, we . . . disturb the circuit court's decision if the circuit court abused its discretion [or] the decision is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Johnson v. State*, 385 So. 3d 467, 469 (¶6) (Miss. Ct. App. 2023) (quoting *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017)).

## DISCUSSION

## I.    Court-Appointed Counsel

¶16.    During the evidentiary hearing on remand, Magee was nearing the end of the direct examination of his first witness when he referenced a previously denied motion seeking court-appointed counsel.  As the State points out, Magee did not specifically renew his request for a court-appointed attorney at that time.  Instead, he simply stated that he had filed the motion because he did not want to go into the courtroom by himself when he did not really know "the court stuff."  In response, the circuit judge noted that Magee's PCR motion was civil in nature and that Magee was not entitled to court-appointed counsel.  Magee now alleges on appeal that the circuit court erred by failing to appoint counsel to represent him at the second evidentiary hearing.

¶17.    As the circuit judge informed Magee during the second evidentiary hearing, "there is no right to appointed counsel in PCR proceedings."  *Porras v. State*, 365 So. 3d 987, 992 (¶17) (Miss. Ct. App. 2022) (quoting *Brooks v. State*, 208 So. 3d 14, 19 (¶14) (Miss. Ct. App. 2017)).  Rather, "the circuit court has discretion to appoint counsel in PCR proceedings where the circuit court determines that the petitioner qualifies and displays a need for counsel."  *Id.* (quoting *Higginbotham v. State*, 114 So. 3d 9, 17 (¶26) (Miss. Ct. App. 2012)).  Here, a review of the record fails to reflect Magee's need for appointed counsel.  To prove the claims raised in his 2018 PCR motion, Magee attached not only his own affidavit but also supporting affidavits from three family members.  *Magee*, 340 So. 3d at 298 (¶3).  Upon being granted a second evidentiary hearing, Magee testified as to his recollection of events

8

and presented corroborating testimony from his mother and two aunts. In addition, Magee called his trial attorney, Laher, as a witness. And as the State asserts, when Laher's information contradicted the statements Magee and his family members gave, Magee sought to discredit Laher's testimony through additional questioning. Thus, based upon our consideration of the record and relevant caselaw, we find no clear error or abuse of discretion by the circuit court with regard to this claim.

## II.    Involuntary Guilty Pleas

¶18.    Magee also alleges that his trial attorney misinformed him about the consequences of pleading guilty, which rendered his guilty pleas involuntary. Relevant to Magee's argument, this Court recently stated the following:

> A guilty plea is binding where it is entered voluntarily, knowingly, and intelligently. For a guilty plea to be considered knowing, intelligent, and voluntary, the defendant must be advised concerning the nature of the charge against him and the consequences of the plea. When assessing the voluntariness of a guilty plea, the most significant evidence of all is the thoroughness of the trial court's interrogation during the plea colloquy. We have held that great weight is given to statements made under oath and in open court.

*Tate v. State*, 372 So. 3d 1054, 1057 (¶7) (Miss. Ct. App. 2023) (citations and internal quotation marks omitted).

¶19.    "At an evidentiary hearing on a PCR motion, the petitioner bears the burden of proving 'by a preponderance of the evidence that he is entitled to the relief.'" *Roberson v. State*, 354 So. 3d 422, 426 (¶23) (Miss. Ct. App. 2022) (quoting Miss. Code Ann. § 99-39-23(7) (Rev. 2020)). To support his PCR claims, Magee not only relied on his own

9

testimony but also presented testimony from his mother and two aunts. In direct contrast to Magee's evidence, his trial attorney repeatedly testified that he had properly informed Magee about the consequences of accepting the State's plea deal for second-degree murder and had never informed Magee that he would get out of prison after serving only six or seven years. To further contradict Magee's claims, the State introduced into evidence Magee's signed "Know Your Rights Before You Plead" form and the transcript from Magee's plea hearing. In response to the State's questioning during the evidentiary hearing, Magee acknowledged that in both the signed form and during his plea colloquy, he specifically stated that no one had promised him anything to induce his guilty pleas.

¶20. In reaching a decision on Magee's requested relief, the circuit court considered not only the contradictory testimony given during the evidentiary hearing but also the admissions Magee had previously made in his "Know Your Rights Before You Plead" form and during the plea hearing. The circuit judge noted in his order that during the plea hearing, he had "obtained verbal sworn statements" from Magee acknowledging "that Magee understood his rights[,]" understood "the proceedings, . . . had not been coerced into pleading guilty, . . . [and] was pleading guilty only because he was guilty." Moreover, the circuit judge found the transcript of the plea hearing reflected that he had thoroughly questioned Magee "as to whether [Magee] understood his rights and all implications of the plea and sentencing proceedings, including the minimum and maximum sentences for each count for which he was charged[,] to which [Magee] answered under oath in the affirmative."

10

¶21. Based on the testimony presented at the evidentiary hearing, as well as the evidence pertaining to Magee's plea hearing, the circuit judge concluded that Magee's trial attorney had not misinformed Magee about the consequences of pleading guilty and that Magee had knowingly, intelligently, and voluntarily entered his guilty pleas. Upon review, "we cannot say that the circuit judge's credibility assessments and denial of [Magee's] PCR motion were clearly erroneous." *Roberson*, 354 So. 3d at 427 (¶27). Because substantial credible evidence supported the circuit judge's determinations, we affirm the circuit judge's findings with regard to the voluntariness of Magee's guilty pleas.

### III.   Ineffective-Assistance Claim

¶22. Magee also argues on appeal that his trial attorney provided ineffective assistance of counsel by failing "to adequately advise him of his possible defenses to the [crimes] charged" and by failing to sufficiently investigate his case. However, Magee failed to raise these arguments in his first appeal, and he acknowledges in his current appellate brief that his second evidentiary hearing before the circuit court was "specifically limited to the matter of whether or not [his] trial attorney misinformed him as to the amount of time that would serve." As a result, "[t]wo long-held principles" prevent us from considering the merits of this issue. *Flynt v. State*, 183 So. 3d 1, 14 (¶41) (Miss. 2015). "First, [Mississippi caselaw] has long held that issues not raised on appeal are procedurally barred from consideration. Second, [the appellate courts] will not hold a trial court in error for issues not presented to it for consideration." *Id.* (citations omitted). Because this issue is procedurally barred, we

11

decline to further address the matter on appeal.

## CONCLUSION

¶23.    Finding no clear error, legal error, or abuse of discretion, we affirm the circuit court's order denying Magee's PCR motion.

¶24.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**