# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00867-COA

**JERICKA J. RUFFIN A/K/A JERICKA RUFFIN**                    **APPELLANT**
**A/K/A JERICKA JACOURTNEY RUFFIN**

**v.**

**STATE OF MISSISSIPPI**                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/2024 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WARREN LOUIS MARTIN JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/06/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     On January 18, 2024, Jericka Ruffin pled guilty to one count of felonious child abuse, and she was convicted and sentenced on January 23, 2024.  On May 2, 2024, Ruffin filed a motion for post-conviction collateral relief (PCR) in the Madison County Circuit Court, asking the court to vacate her guilty plea due to ineffective assistance of counsel and an involuntary plea.  Because Ruffin failed to include a supporting affidavit with her motion and because Ruffin acknowledged at her plea hearing that she was freely and voluntarily admitting her guilt, the circuit court denied Ruffin's PCR motion.  She now appeals from the order denying her PCR motion, arguing that her trial attorney's ineffective assistance of counsel led to an involuntary plea.  After reviewing the record, the parties' briefs, and

relevant precedent, we affirm the circuit court's ruling.

**Facts and Procedural History**

¶2. On September 18, 2023, a Madison County grand jury returned an indictment against Ruffin for one count of felonious child abuse for strangling a child in violation of Mississippi Code Annotated section 97-5-39(2)(a)(iii) (Supp. 2023),[1] and one count of felonious child abuse for striking a child in violation of section 97-5-39(2)(b)(ii).[2] Ruffin retained counsel. On November 16, 2023, Ruffin waived her arraignment and pled not guilty. Ruffin and her trial attorney also signed a scheduling order, which included a date for the entry of any guilty plea.

¶3. The State offered a plea agreement to Ruffin. In it, the State proposed that if Ruffin pleaded guilty to striking a child, Count II, which carried a maximum sentence of ten years, the State would request an order of nolle prosequi for Count I, strangling a child, which could result in a life sentence. The State also recommended that Ruffin serve all ten years in the custody of the Mississippi Department of Corrections (MDOC) and pay all required court fees.

¶4. Ruffin decided to plead guilty, and she and her attorney completed and signed Ruffin's plea petition, which included the State's recommendations. The petition specifically

---

[1] Section 97-5-39(2)(a)(iii) states that a person shall be guilty of felonious child abuse if a person shall "intentionally, knowingly or recklessly . . . [s]trangle, choke, smother or in any way interfere with any child's breathing."

[2] Section 97-5-39(2)(b)(ii) states that a person shall be guilty if a person shall "intentionally, knowingly or recklessly . . . [s]trike a child under the age of fourteen (14) about the face or head with a closed fist."

stated that the minimum sentence for Count II was two years and that the maximum was ten years, with the State recommending she serve ten years in MDOC's custody. Ruffin signed each individual page of the eight-page plea petition.

¶5. During the plea hearing, Ruffin affirmed to the trial court that she had the opportunity to fully discuss the facts and possible defenses related to Count II, felonious child abuse for striking a child. Additionally, Ruffin told the trial court that she was pleading guilty based on the evidence and the probability of her conviction. Ruffin also confirmed that she understood the minimum and maximum sentences that she faced if convicted of Count II. But Ruffin expressed surprise when she was asked about the State's ten-year sentencing recommendation, and the trial court recessed so Ruffin could speak to her trial attorney. After the break, Ruffin acknowledged that the State's recommendation *was* what she expected to hear, and she pled guilty to Count II.

¶6. The trial court accepted Ruffin's guilty plea and, as the State recommended, sentenced her to serve ten years in the custody of the MDOC. On January 23, 2024, the trial court entered a judgment of conviction and sentence that reflected the trial court's orders from the bench.

*PCR Motion*

¶7. On May 2, 2024, Ruffin hired new counsel and filed her PCR motion. She argued that she received ineffective assistance of counsel and that her plea was involuntary. Ruffin's motion was sworn and verified, and she attached her indictment, plea petition, a transcript of the plea hearing, the judgment of conviction and sentence, a scheduling order, her trial

3

attorney's motion for discovery, and a letter from her trial attorney that supposedly was sent to Ruffin asking her to review the discovery. Ruffin attached no other affidavits to support her claims.

¶8. In her PCR motion, Ruffin first alleged that she did not receive the discovery produced by the State. According to the record, on November 30, 2023, Ruffin's trial attorney filed a motion for discovery. In a letter dated December 1, 2023, the trial attorney sent Ruffin the State's discovery responses to review. In the PCR motion, Ruffin claimed that she did not see any of the discovery. She pointed out that the letter that was sent by the trial attorney was mailed to the wrong address (to **145** Dixon Drive instead of **168** Dixon Drive in Canton, Mississippi 39046).[3]

¶9. Ruffin next contended that her trial attorney failed to appear at scheduled court proceedings. According to the scheduling order, a settlement conference was to be held on January 8, 2024, and the deadline to file either a guilty plea or a pre-trial conference checklist was set for January 16, 2024. Ruffin alleged in her PCR motion that she appeared at the settlement conference on January 8, 2024, but her trial attorney did not. She said the court staff instructed her to contact her trial attorney and return on January 16, 2024, the deadline for entering a guilty plea. That deadline, however, was postponed to January 18, 2024, due to inclement weather. Ruffin contended that on January 18, 2024, she arrived first, and the

---

[3] The record reflects that the State did not send the requested discovery until December 5. However, Ruffin's trial attorney allegedly sent her a copy of the discovery on December 1. The discovery itself is not in the record. It is also unclear how Ruffin obtained counsel's letter to her when she claimed she did not receive it because it was sent to the wrong address.

judge held her in contempt for "failure of [her trial attorney] to either file a guilty plea petition or a completed pre-trial checklist" as required by the scheduling order. As a result, Ruffin claimed that she was placed in a "holding tank" until her attorney arrived. She alleged that when her trial attorney finally arrived, he told her to sign a completed plea petition in order to "avoid a life sentence." Ruffin stated that within ten minutes of the attorney's arrival, Ruffin stated that she had testified and entered her plea.

¶10. The State did not file a response to Ruffin's PCR motion, nor did the court order the State to respond. On July 24, 2024, the circuit court summarily denied Ruffin's PCR motion because Ruffin "fail[ed] to attach supporting affidavits and relies solely on her own sworn motion" and because Ruffin "acknowledged that she was freely and voluntarily admitting her guilt to the crime." The court also noted that Ruffin stated during the plea hearing that she was not coerced into pleading guilty.

¶11. Ruffin appeals from the circuit court's order denying her PCR motion, arguing that she received ineffective assistance of counsel and that her plea was involuntary. The State argues on appeal that Ruffin's claims fail because she provided no explanation as to why her trial attorney's alleged failures would have led to a different result. The State also argues that her plea was knowingly, intelligently, and voluntarily made.

**Standard of Review**

¶12. "Unless a circuit court's decision was clearly erroneous or an abuse of its discretion, the circuit court's denial or dismissal of a PCR motion will not be reversed." *Varnado v. State*, 362 So. 3d 127, 133 (¶16) (Miss. Ct. App. 2023) (quoting *Crockett v. State*, 334 So.

5

3d 1232, 1237 (¶13) (Miss. Ct. App. 2022)). "Where questions of law are raised, they are reviewed under the de novo standard." *Id.* "[I]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief," then the circuit court may summarily dismiss a PCR motion without an evidentiary hearing. *See* Miss. Code Ann. § 99-39-11(2) (Rev. 2020); *Varnado*, 362 So. 3d at 133 (¶16) (quoting *Kent v. State*, 269 So. 3d 401, 402 (¶2) (Miss. Ct. App. 2018)).

**Discussion**

I.     **Whether Ruffin's sworn statements in her PCR motion are sufficient to support her claim of ineffective assistance of counsel.**

¶13.     First, we address the sufficiency of the contents of Ruffin's PCR motion. The circuit court ruled that Ruffin's ineffective assistance claim fails because Ruffin failed to attach any supporting affidavits and relied solely on her own sworn motion. We agree.

¶14.     According to Mississippi Code Annotated section 99-39-9(1)(d) (Rev. 2020), a PCR motion must contain "[a] separate statement of the specific facts which are within the personal knowledge of the petitioner and which shall be sworn to by the petitioner." Additionally, "claims of ineffective assistance of counsel must be pled with specificity, *and* the claim must be supported by affidavits other than [the defendant's]." *Varnado*, 362 So. 3d at 137 (¶29) (emphasis added) (quoting *Kennedy v. State*, 287 So. 3d 258, 265 (¶22) (Miss. Ct. App. 2019)). "A post-conviction-relief motion unsupported by affidavits other than the petitioner's own fails to meet the pleading requirements of Mississippi Code Annotated section 99-39-9(1), and, thus, is deficient on its face and properly dismissed without an evidentiary hearing." *Payton v. State*, 276 So. 3d 1201, 1203 (¶9) (Miss. Ct. App.

6

2018) (quoting *Edwards v. State*, 995 So. 2d 824, 826-27 (¶11) (Miss. Ct. App. 2008)). Further, section 99-39-11(2) states that "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified." *Accord Herrin v. State*, 281 So. 3d 1012, 1016 (¶17) (Miss. Ct. App. 2019).

¶15. This Court noted the importance of such affidavits in *Rigdon v. State*, 126 So. 3d 931 (Miss. Ct. App. 2013). In that PCR case, Rigdon raised an ineffective-assistance-of-counsel claim. *Id.* at 936 (¶16). Rigdon alleged, among other things, that her counsel misled her about the charges and withheld evidence from her. *Id.* However, Rigdon failed to attach any supporting affidavit, and this Court found that "Rigdon provide[d] nothing beyond her own assertions that her attorney actually engaged in this conduct." *Id.* (citing *Brooks v. State*, 89 So. 3d 626, 628 (¶6) (Miss. Ct. App. 2011) (holding that in PCR cases "where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit")). We held that "[w]ithout anything beyond her own allegations that her counsel was deficient, Rigdon's ineffective-assistance-of-counsel claim was also properly dismissed." *Id*. at (¶16).

¶16. However, PCR movants are not without recourse. We have also held that a "[f]ailure to attach affidavits of other persons may be excused upon a showing of good cause, specifically detailed in the motion, why they cannot be obtained." *Moore v. State*, 250 So. 3d 521, 525 (¶12) (Miss. Ct. App. 2018).

¶17. In the case at hand, the circuit court stated in its order that Ruffin failed to support her motion with affidavits other than her own sworn statements. Our review of the record

confirms that Ruffin did not include an affidavit other than her own sworn motion, nor did she plead any reasons why such affidavits could not be obtained. Thus, like the defendant in *Rigdon*, Ruffin, too, provided nothing beyond her own assertions that her attorney actually engaged in the conduct she alleged, namely failing to send her the discovery and failing to appear. Again, "[t]his Court has held in PCR cases that where a party offers only his affidavit, then his ineffective-assistance claim is without merit." *Brooks*, 89 So. 3d at 628 (¶6). Accordingly, Ruffin's claim for ineffective assistance of counsel fails for presenting insufficient proof in the PCR proceedings.

## II.     Whether Ruffin received ineffective assistance of counsel.

¶18.     Despite Ruffin's failure to provide more evidence, her claim would also fail on the merits. On appeal, Ruffin contends that she received ineffective assistance of counsel (1) because she was never given an opportunity to review the discovery in her case before her plea hearing, and (2) because she expected a lesser sentence.

¶19.     To prevail on a claim of ineffective assistance of counsel, a defendant "must show that his attorney's performance was deficient and that it resulted in prejudice." *Brooks v. State*, 208 So. 3d 14, 18 (¶10) (Miss. Ct. App. 2017). When a defendant enters a guilty plea, though, he "waive[s] claims of ineffective assistance of counsel except as they relate to the voluntariness of the giving of the guilty plea." *Id*. An ineffective-assistance claim by a defendant who pled guilty must demonstrate that "counsel's conduct proximately resulted in the guilty plea, and that but for counsel's errors, he would not have entered the plea." *Id*. (quoting *Hickerson v. State*, 336 So. 3d 1134, 1142-43 (¶22) (Miss. Ct. App. 2022)).

8

### A. Failure to Receive Discovery

¶20. On appeal, Ruffin claims she never received the discovery to review. She points out that the December 1, 2023 letter from her trial attorney allegedly containing the discovery was sent to the wrong address (**145** Dixon Drive as opposed to **168** Dixon Drive in Canton, Mississippi 39046). Ruffin also argues that her trial attorney only requested discovery on November 30, 2023, so it was "highly unlikely" that he received it the same day in order to mail it to her the next. However, Ruffin affirmed at the plea hearing that she had the opportunity to discuss all the facts and circumstances relating to her crime with her attorney:

> Q: Have you had an opportunity to fully discuss with your attorney . . . all facts and circumstances relating to the crimes you're pleading guilty to?
>
> A: Yes, sir.
>
> Q: Did you tell [the trial attorney] all facts that you believe might be necessary for your defense?
>
> A: Yes, sir.
>
> Q: Did your discussions with [the trial attorney] include the elements of the crimes against you?
>
> A: Yes, sir.

Such discussions would have covered any information contained in discovery. Moreover, the State does not even have to provide impeachment discovery to a defendant who enters a guilty plea. In *United States v. Ruiz*, 536 U.S. 622, 633 (2002), the United States Supreme Court stated:

> We do not believe the Constitution here requires provision of this information to the defendant prior to plea bargaining—for most (though not all) of the reasons previously stated. That is to say, in the context of this agreement, the

9

need for this information is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea.

This Court has cited *Ruiz* and found that by entering a guilty plea, a defendant waived his or her later claim of a *Brady* violation. *Wilkerson v. State*, 307 So. 3d 1231, 1245 (¶34) (Miss. Ct. App. 2020) (referencing *Brady v Maryland*, 373 U.S. 83 (1963)). In this case, the State did provide discovery, Ruffin provided no other evidence that her attorney did not send her the discovery, and Ruffin pleaded guilty, waiving any claim concerning discovery when she pleaded guilty.

### B. *Expectation of Lesser Sentence*

¶21. Ruffin also argues that she was misinformed about her sentencing because she did not expect the State to recommend a ten-year sentence. However, the State's recommendation was clearly written in Ruffin's plea petition, which Ruffin signed page by page. Moreover, the transcript of her plea hearing reveals that any misunderstanding about the State's recommendation was resolved before Ruffin pled guilty, as shown in the following exchange:

> [THE STATE]: Your Honor, the State would request this Defendant be sentenced to the maximum of ten years in the custody of the Mississippi Department of Corrections, that she pay investigative fees in the amount of $500 to the Madison County Sheriff's Department and the District Attorney's Office, that she pay all statutory costs, fees and assessments imposed by the Court, and that she not violate any condition of a youth or chancery court order.
>
> The State would request that Count I be nolle prossed based on her guilty plea in Count II.

> BY THE COURT:

10

Q:     Ms. Ruffin, is that the recommendation you expected to hear?

A:     No, sir.

Q:     What did you expect to hear?

A:     Not ten years.

THE COURT:     All right. Well, that's the recommendation of the State. So let's take a pause and I'll let you speak with Mr. Ruffin [sic] -- I mean I'll allow you to speak with [the trial attorney]. But the recommendation on this piece of paper is ten years to serve, but they are nolle prossing Count I, which I believe would also carry an additional ten years.

[THE STATE]:     Life.

THE COURT:     It carries life.

[THE STATE]:     Yes, sir.

THE COURT:     Do you understand that?

DEFENDANT:     Yes, sir.

THE COURT:     All right. I'm going to give you and [the trial attorney] a few moments to speak. Okay? If you would, please take them to the back.

After the recess, during which Ruffin discussed the recommended ten-year sentence for Count II, Ruffin's exchange with the court continued:

Q:     Ms. Ruffin, is that the recommendation you expected to hear?

A:     Yes, sir.

Q:     Do you understand that you can't rely on any promise about the percent of your sentence you will be required to serve?

A:     Yes, sir.

Q:     At this point, it's not too late to stop the hearing, but it will be if the Court accepts your guilty plea. And I want to be certain that you want to plead guilty. Do you want to plead guilty?

A:     Yes, sir.

Q:     Do you have any questions?

A:     No, sir.

Q:     How do you plead, guilty or not guilty?

A:     Guilty.

Considering this information from the transcript of the plea hearing, the circuit court found Ruffin's involuntary-plea claim failed because Ruffin acknowledged that she freely and voluntarily admitted her guilt to the crime with full knowledge of the State's recommendation.

¶22.   "For a plea to be voluntary, a defendant must know the possible sentences he might receive as a result of pleading guilty." *Albert v. State*, 372 So. 3d 173, 178 (¶11) (Miss. Ct. App. 2023) (quoting *Lowell v. State*, 229 So. 3d 1054, 1059 (¶18) (Miss. Ct. App. 2017)). "The defendant 'must also understand the maximum and minimum penalties provided by law.'" *Id*. (quoting *Britton v. State*, 130 So. 3d 90, 94 (¶10) (Miss. Ct. App. 2013)). Moreover, "mere proof that a defendant has been misinformed as to some aspect of his prospective sentence does not automatically permit him to have that plea set aside. Rather, the defendant must show that he legitimately relied on the misinformation in the decision process that led to his guilty plea." *Albert*, 372 So. 3d at 180 (¶16) (quoting *Hall v. State*, 800 So. 2d 1202, 1206 (¶13) (Miss. Ct. App. 2001)).

¶23. It is clear from the record that Ruffin was informed that Count I would be nolle prosequied as a condition of her pleading guilty to Count II. Thus, Ruffin would not be at risk of receiving a life sentence so long as she accepted the plea. This was communicated during the colloquy and in the plea petition. In addition, the record indicates that the trial court recessed the proceedings to allow Ruffin to confer with her attorney so that she understood that she would be given a ten-year sentence for Count II. When the court reconvened, Ruffin stated that she understood and accepted the conditions. Thus, we find no merit to Ruffin's claim that she was not aware of the State's recommended ten-year sentence on Count II.

¶24. In addition, after the recess, Ruffin stated under oath that she was satisfied with her attorney's representation and had no complaints about it. This Court recognizes that "[a] defendant's declarations during the plea colloquy that he was satisfied with the services of his lawyer are presumptively true." *Reardon v. State*, 341 So. 3d 1004, 1009 (¶14) (Miss. Ct. App. 2022). Further, "[t]his Court is entitled to place great weight on the sworn testimony of a defendant given at a plea hearing, and a defendant faces a rather high hurdle in recanting that testimony." *Johnson v. State*, 385 So. 3d 467, 470 (¶10) (Miss. Ct. App. 2023) (quoting *Varnado*, 362 So. 3d at 136 (¶28)). Similarly, in this case, Ruffin's bare assertions, speculation, and reliance on self-serving statements are not enough to overcome the "rather high hurdle in recanting" her sworn testimony concerning her satisfaction with her trial attorney's services. By failing to provide sufficient evidence to refute her sworn testimony, we find Ruffin's ineffective-assistance-of-counsel claim is without merit.

13

## Conclusion

¶25.   In summary, we find no reversible error in the court's dismissal of Ruffin's PCR motion.  The claim was barred because Ruffin provided no supporting affidavit or excuse for why she could not secure one.  Notwithstanding her failure to provide a supporting affidavit, Ruffin failed to present sufficient proof to impeach her own sworn testimony at her guilty plea hearing that she was fully informed of all the elements of the crime and punishments she was facing and of the State's recommended sentence.  Moreover, Ruffin stated under oath that she was satisfied with her trial attorney's representation.  Accordingly, we find no reversible error in the dismissal of her PCR motion.  Therefore, we affirm.

¶26.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.  WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**